IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Wayne Vinson, | ) | C/A No. 0:10-79-RMG-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND** |
| | ) | **REPORT AND RECOMMENDATION** |
| United States Marshals Service; David | ) | |
| Craneford; and Deontye Joyner, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Wayne Vinson ("Vinson"), a self-represented federal prisoner, filed this action

pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq., and Bivens v. Six Unknown

Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).[1] This matter is before the

court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and

Recommendation on the defendants' motion to dismiss, or in the alternative, for summary judgment.

(ECF No. 52.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Vinson was advised

of the summary judgment and dismissal procedures and the possible consequences if he failed to

respond adequately to the defendants' motion. (ECF No. 53.) Vinson filed a response in opposition

---

[1] In Bivens, the United States Supreme Court established a direct cause of action under the
Constitution of the United States against federal officials for the violation of federal constitutional
rights. A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C.
§ 1983; therefore, case law involving § 1983 claims is generally applicable in Bivens actions. See
Harlow v. Fitzgerald, 457 U.S. 800, 814-20, n. 30 (1982); see also Farmer v. Brennan, 511 U.S. 825
(1994).

(ECF No. 68) and the defendants filed a reply (ECF No. 89).[2]  Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

## BACKGROUND

Vinson alleges that on September 4, 2008 he was injured while being transported by the United States Marshal's Service ("USMS") in a passenger van.  Specifically, Vinson alleges that Defendant Cranford[3] was driving too fast and switching lanes to avoid hitting another vehicle. Vinson states that he was seated in the back of the van with handcuffs and leg irons but he was not wearing a seatbelt.  Vinson alleges that he was suddenly "thrown" to the front of the van, hitting the cage.  As a result, Vinson asserts that he hit the left side of his head, cut his left wrist, hit his left knee, scraped his right knee, and twisted his back and neck.  Vinson states that the individual defendants assisted him up, placed him back in his seat, buckled him in, and put his shoes back on. Vinson alleges that he requested medical attention.  He states that the defendants returned him to Alvin S. Glenn Detention Center where he was treated by the detention center's medical center, rather than taking him to the hospital.  Vinson appears to claim that the medical treatment was inadequate at the  detention center and later facilities.  Vinson speculates that if the defendants had taken him to a hospital for treatment he would not still be in pain.  Vinson raises claims under the

---

[2] At the time that the defendants filed their motion, the third defendant in this matter was listed as Defendant Unknown Agent.  This defendant has since been identified as Deontye Joyner and has been served with the Amended Complaint.  Accordingly, the defendants have moved to substitute Deontye Joyner for the Unknown Agent and to incorporate him into the defendants' motion to dismiss, or in the alternative, for summary judgment.  (ECF No. 91.)  The defendants' request for substitution is moot as this has already occurred; however, the defendants' request to incorporate Defendant Joyner into their motion is granted.

[3] It appears from the filings that the correct spelling of Defendant David Craneford's last name is "Cranford" and the court will refer to him as such in this Report and Recommendation.

Federal Tort Claims Act and under the Eighth Amendment to the United States Constitution, alleging that the defendants acted with deliberate indifference. He seeks monetary damages in the amount of $2,500,000, or a commuted sentence to time served and $500,000. (See generally Am. Compl., ECF No 15; see also ECF No. 11.)

## DISCUSSION

### A.    12(b)(1) Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

### B.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**C.      Jurisdiction Under the Federal Tort Claims Act**

**1.      FTCA Generally**

Vinson has filed this action pursuant to the Federal Tort Claims Act ("FTCA" or "Act").  28 U.S.C. §§ 2671-2680.  As an initial matter, the only proper defendant in an FTCA action is the United States.  28 U.S.C. §§ 1346(b)(1), 2679(b)(1).  Therefore, the individual defendants and the USMS are entitled to dismissal of Vinson's FTCA claims.  However, even if the United States were substituted for the defendants for the purposes of these claims, the United States would be entitled immunity for the reasons that follow.

The Act provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for loss of property or personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  This waiver of immunity, however, is subject to exceptions.  See 28 U.S.C. § 2680 (providing exceptions to the provisions of the Tort Claims Procedure statutes and to § 1346(b)'s waiver of sovereign immunity).  The most important of these is the "discretionary function exception."  See McMellon v. United States, 387 F.3d 329, 335 (4th Cir. 2004) (en banc) (describing § 2680(a)'s exception as "the most important").  The discretionary function exception to the Government's waiver of immunity for tort claims provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government."  28 U.S.C. § 2680(a).  The discretionary function exception preserves sovereign

immunity even if the Government was negligent, see Blakey v. U.S.S. Iowa, 991 F.2d 148, 152 (4th Cir. 1993), and even if the government employee abused his or her discretion. 28 U.S.C. § 2680(a).

If the discretionary function exception applies, then the claim is outside the limited waiver of immunity created by the FTCA and the district court is without subject matter jurisdiction to adjudicate it. See Medina v. United States, 259 F.3d 220, 223-24 (4th Cir. 2001) (finding statutory exceptions to the FTCA's waiver of immunity to be jurisdictional). The burden is on the plaintiff to show that the FTCA's waiver of immunity applies and that the statutory exceptions do not. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). Further, the Act's limited waiver of sovereign immunity and its exceptions must be strictly construed in favor of the sovereign. Welch, 409 F.3d at 650-51; see also Lane v. Pena, 518 U.S. 187, 192 (1996) (stating that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign").

## 2.    Discretionary Function Exception

In Berkovitz v. United States and United States v. Gaubert, the United States Supreme Court established a two-part test to determine whether the discretionary function exception applies. Gaubert, 499 U.S. 315, 322 (1991); Berkovitz, 486 U.S. 531, 536-37 (1988). First, the allegedly negligent act or failure to act must not have been subject to a statute, regulation, or policy that prescribed a specific course of action for the government employee to follow. Gaubert, 499 U.S. at 322; Berkovitz, 486 U.S. at 536. If the conduct at issue was governed by such a provision, then the government employee's action cannot have been discretionary. See Williams v. United States, 50 F.3d 299, 309 (4th Cir. 1995). Second, assuming that the employee had discretion because no statute, regulation, or policy required a particular action, then the employee's conduct must be susceptible to an analysis involving social, economic, or political policy considerations. Gaubert,

499 U.S. at 322-23.  This prong is designed to ensure that courts apply the exception only to the type of discretionary conduct that Congress sought to protect through § 2680(a).  United States v. Varig Airlines, 467 U.S. 797, 813 (1984).

The focus of the inquiry must be on the " 'nature of the conduct' " and not the " 'status of the actor.' "  Gaubert, 499 U.S. at 322 (quoting Varig Airlines, 467 U.S. at 813); see also Baum v. United States, 986 F.2d 716, 720-21 (4th Cir. 1993) (holding that the court should look to the nature of the challenged decision and determine whether it is inherently grounded in policy considerations). The discretionary function exception not only protects high-level planning or policy activities, but also applies to discretionary activities of government employees that are not characterized as "operational" or "planning" decisions, as long as the activities are grounded in policy considerations. Gaubert, 499 U.S. at 325-26.  Thus, "day-to-day operational decisions of government [employees] are entitled to immunity under the FTCA so long as the choices are 'susceptible to policy analysis.' " Smith v. Wash. Metro. Area Transit Auth., 290 F.3d 201, 208 (4th Cir. 2002) (quoting Gaubert, 499 U.S. at 325).

Moreover, for the exception to apply, the employee need not have actually conducted a policy analysis in connection with the challenged action or inaction.  See Gaubert, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.").  The court must analyze the conduct at issue objectively, with an inquiry as to whether the employee's decision is one where the court would expect inherent considerations of policy, rather than a subjective, fact-based focus on the circumstances surrounding the employee's exercise of a particular discretionary function.  Baum, 986 F.2d at 720-21.  When the employee is acting pursuant to a discretionary statute, regulation, or guideline, there is a strong presumption that

the employee's conduct is grounded in the policies underlying that provision.  Gaubert, 499 U.S. at

324; see also Bernaldes v. United States, 81 F.3d 428, 429 (4th Cir. 1996).

### 3.    Applicability of Discretionary Function Exception to Vinson's Claims

Applying this test to Vinson's claims, the court finds that Vinson has not carried his burden

of proof to show that his claims fall within the FTCA's limited waiver of sovereign immunity and

outside the discretionary function exception.  It is undisputed that the USMS is responsible for the

safe and secure transfer of prisoners within its custody.  See 18 U.S.C. §§ 3621, 4002, 4006-08,

4013, 4086; 28 C.F.R. §§ 0.111(j), (k) and (o); (see also Miller Decl. ¶ 4, ECF No. 52-1 at 1).

However, there is no evidence that any of the defendants violated an applicable federal statute,

regulation, or policy regarding the use of seatbelts in transporting a prisoner.  While policies may

exist requiring federal *employees* to wear their seatbelts, (see Executive Order No. 13043, 1997 WL

187137 (Apr. 16, 1997), ECF No. 52-1 at 6-8), there is no policy requiring deputy marshals

transporting prisoners to seatbelt a prisoner in the back of a passenger van.

Patricia Miller, the Assistant Chief Deputy United States Marshal for the District of South

Carolina and former Supervisory Inspector/Instructor at the United States Marshals Training

Academy, declares that she is aware of no statute, regulation, or directive mandating that prisoners

be secured with safety belts during vehicle transportation.  She states that current USMS policy does

not include such a requirement, and that, by contrast, the policy states that " 'deputies transporting

prisoners are not required to seat belt prisoners in the back seat(s) of GOVs [government-owned

vehicles].' "  (Miller Decl. ¶ 5, ECF No. 52-1 at 2.)  To Miller's knowledge, in balancing the risks

of prisoner escape and the safety of the employees, the prisoners, and the public, the USMS in the

District of South Carolina has decided *not* to require the use of seatbelts during prisoner transport.

(Id. ¶ 6.)

Vinson's reliance on the South Carolina seatbelt statute, describing when the failure to wear a seatbelt constitutes an offense under South Carolina law, is misplaced, as that state statute does not indicate that the deputies' actions were not discretionary. See S.C. Code Ann. §§ 56-5-6510 et seq. In fact, the law provides that a violation of the safety belts article "is not negligence per se or contributory negligence, and is not admissible as evidence in a civil action." S.C. Code Ann. § 56-5-6540(C); see also Sims v. Gregory, 691 S.E.2d 480, 481 (S.C. Ct. App. 2010) (discussing § 56-5-6540(C) and holding that "[e]ven if we assume [the defendant] violated the seatbelt law by failing to ensure [the minor passenger] was wearing her safety belt, section 56-5-6540(C) precludes any evidence of [the defendant's] alleged violation to be used in a civil trial to show he failed to restrain [the minor passenger]."); cf. Vinzant v. United States, No. 2:06-CV-10561, 2010 WL 1857277 (E.D. La. May 7, 2010) (addressing Louisiana's statute, which unlike South Carolina's, does not appear to expressly prohibit consideration of the state seatbelt statute in connection with a negligence claim). Additionally, even if the deputies' alleged failure would be considered actionable under state tort law, the discretionary function exception would nonetheless apply with regard to the sovereign immunity analysis.  See Medina v. United States, 259 F.3d 220, 226 (4th Cir. 2001).

Accordingly, Vinson has failed to demonstrate that the defendants' actions violated any applicable, non-discretionary provision.  Moreover, the USMS's actions regarding the use of seatbelts when transporting prisoners is susceptible to policy analysis. See Gaubert, 499 U.S. at 322-23.  The USMS for the District of South Carolina has weighed the risk of security and safety—considering potential escape, proximity of the marshals to the prisoner, and prisoner safety—in determining that deputy marshals are not required to seatbelt the prisoners during vehicle transportation.  (See Miller Decl. ¶ 6, ECF No. 52-1 at 2; see also Cranford Decl. ¶ 9, ECF No. 52-2

at 2.)  Thus, the defendants' actions at issue in this matter fall within the discretionary function exception to the FTCA's waiver of immunity.

Other courts considering this issue have also determined that the USMS's failure to provide or use safety belts when transporting prisoners falls within the discretionary function exception.  See Vinzant v. United States, No. 2:06-CV-10561, 2010 WL 1857277 (E.D. La. May 7, 2010) (holding that "the decision not to secure inmates with safety belts during transport is a classic example of the type of policy choice that is shielded by the discretionary function exception to the FTCA"); Reynolds v. United States, No. 4:04cv95/RV/EMT, 2006 WL 5400338 (N.D. Fla. Jan. 30, 2006) (holding that "the claim against the United States and the USMS regarding the failure to provide safety belts is precluded by the exception to the waiver of sovereign immunity provided in section 2680(a) of the FTCA"); McCaffray v. United States, No. 2:97-CV-403, 1998 WL 560047 (D. Vt. Aug. 27, 1998) (same).  Similarly, to the extent that Vinson's Amended Complaint, liberally construed, alleges that the defendants were negligent for providing him medical care at Alvin S. Glenn Detention Center,[4] this decision is also protected under the discretionary function exception. See Johnson v. United States, No. Civ.A. 4:05CV40, 2006 WL 572312, at *5 (E.D.Va. Mar. 7, 2006) (concluding that "that the decision to contract with the [the Virginia Peninsula Regional Jail ] to house, monitor, and provide medical care to federal prisoners falls within the discretionary function exception as it involves administrative decisions grounded in social, economic, and political policy") (internal quotation marks & citations omitted).

---

[4] The parties do not appear to dispute that Alvin S. Glenn Detention Center houses USMS inmates pursuant to an Intergovernmental Agreement for the detention center to provide the prisoners with housing, safekeeping, and medical care.  (Miller Decl. ¶¶ 12-13, ECF No. 52-1 at 3.)

Based on the foregoing, the court concludes that even if the defendants were negligent or abused their discretion, the United States is immune from suit on these claims pursuant to federal law. 28 U.S.C. § 2680(a).

### 4.    Detention Center Medical Staff

To the extent that Vinson's claims against the United States pursuant to the FTCA are based on the actions by the medical staff at the detention center, the United States cannot be liable for the tortious actions of independent contractors. <u>See</u> 28 U.S.C. 2671 (stating that contractors are not included in the definition of agency); <u>Williams v. United States</u>, 50 F.3d 299, 305 (4th Cir. 1995) ("By its express terms, the FTCA does not provide for liability of the United States for the acts or omissions of independent contractors.") (citing § 2671); <u>Bethae v. United States</u>, 65 F. Supp. 2d 575, 580-81 (D.S.C. 2006) (determining that Darlington County Detention Center is an independent contractor and holding that the court did not have subject matter jurisdiction over claims against the United States alleging that the detention center was negligent).

### 5.    Vehicular Negligence

To the extent Vinson asserts a claim under the FTCA based on his assertion that Defendant Cranford negligently operated the passenger van, such a claim also fails on this record. As stated above, the Act provides for a limited waiver of the Government's sovereign immunity from suit by allowing a plaintiff to recover damages in a civil action for personal injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

To prevail on a negligence claim in South Carolina, a plaintiff must demonstrate "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach of duty." Fowler v. Hunter, 697 S.E.2d 531, 534 (S.C. 2010). To the extent that Vinson relies on his allegation that the defendants failed to seatbelt him to support this claim, for the reasons discussed above Vinson cannot demonstrate that the defendants owed Vinson a duty to seatbelt him. Moreover, on the record presented, no reasonable jury could find that Vinson's injuries were proximately caused by any other alleged breach of duty by Cranford.

**D.     Eighth Amendment**

Vinson's Amended Complaint also alleges that he is asserting a claim pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). Specifically, Vinson appears to allege that the defendants violated his Eighth Amendment right in transporting him to the detention center for medical care rather than a hospital. Vinson also appears to allege that the defendants violated the Eighth Amendment in failing to restrain him with a seatbelt and based on Defendant Cranford's operation of the passenger van.

As an initial matter, Bivens claims are not actionable against the United States, federal agencies, or official acting in their official capacities as they are protected by sovereign immunity. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a Bivens action does not lie against either agencies or officials in their official capacity"). Accordingly, Defendant USMS and the individual defendants in their official capacities are entitled to dismissal of these claims.

### 1.     Eighth Amendment Generally

To establish a claim under the Eighth Amendment, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

### 2.     Medical Claim

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983, and Bivens, pursuant to the Eighth Amendment to the United States Constitution.[5] See Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). However, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness."

---

[5] The court observes that the alleged actions giving rise to this matter occurred after Vinson was sentenced by the district judge in his federal criminal matter and the parties appear to agree that the Eighth Amendment is the appropriate Amendment under which to analyze his claims. However, even if Vinson were considered a pretrial detainee, the applicable standards would remain the same as the standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. See Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Moreover, because most prison

officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner.  See id.

Vinson's sole allegation against the individual defendants with regard to his medical claim is that they transported him to the detention center to receive medical care rather than a hospital. This allegation fails to state any claim for deliberate indifference; in fact, taking the allegations in Vinson's Complaint as true, he only alleges that the defendants were negligent, which is not actionable under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Vinson's own allegations state that following the incident in the passenger van, Defendant Cranford pulled over, examined him and inquired as to his state, assisted him back to his seat, and transported Vinson to the detention center to receive medical care.  The crux of Vinson's medical claim appears to challenge the treatment that he received at the detention center and at later facilities; however, none of the medical providers are defendants in this matter.  Accordingly, the defendants are entitled to summary judgment on this claim.

### 3.    Vinson's Safety

To the extent that Vinson is attempting to assert an Eighth Amendment claim based on his allegations that the defendants failed to restrain him with a seatbelt and that Defendant Cranford negligently operated the passenger van, such claims fail as a matter of law.  As an initial matter, Vinson repeatedly alleges that the defendants' actions evidenced negligence towards his safety; however, negligence is insufficient to state a claim under the Eighth Amendment.  See Farmer, 511 U.S. at 834 (stating that to satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986).

Moreover, Vinson's reliance on <u>Brown v. Missouri Department of Corrections</u>, 353 F.3d 1038 (8th Cir. 2004) (*per curiam*) ("<u>Brown I</u>") is unavailing as <u>Brown I</u> is distinguishable from this matter. The court summarized <u>Brown</u>'s allegations in his Amended Complaint as follows:

> [A]s Brown and other inmates were being placed in the van for the trip to [the correctional center], Brown asked the five correctional officers (COs) present if they were going to put his seatbelt on, to which they responded, "aw hell you all will be alright," and "what you all don't trust our driving? You don't think were gonna wreck do you?" Brown could not put the seatbelt on himself because he was shackled with 'bellychains, handcuffs, blackbox, and leg chains.' Brown was scared by the way the drivers of the vans were driving: speeding ("up to 70 to 75 miles an hour"), following closely, and passing cars 'even if the road markings suggested otherwise.' At the time of the wreck, all three vans were in the passing lane and had just started to pull back into the right, when the driver of the second van in the caravan, 'slammed on the brakes' to avoid hitting the first van and was rear-ended by the third van.

<u>Id.</u> at 1040. As a result, Brown was taken to the emergency room where he was diagnosed with lower back trauma and whiplash. The court of appeals held that the district erred in dismissing this Complaint for failure to state a claim.[6]

In this case, Vinson alleges that he requested the defendants to assist him with his seatbelt, that he could not seatbelt himself, and that Defendant Cranford was driving recklessly and speeding, allegedly reaching speeds of over 40 to 45mph. (<u>See</u> Vinson Decl., ECF No. 68-2 at 3.) By contrast, Defendant Cranford declares that (1) he was driving the van the day of the incident; (2) due to personal safety concerns he does not seatbelt prisoners for transportation; (3) Vinson was free to put on the seatbelt himself as he "did not preclude him from doing so and I have seen other inmates in restraints hook their own seatbelts;" (4) he was driving at or below the speed limit with a safe

---

[6] The court observes that in this case, the defendants are not moving to dismiss this claim for failure to state a claim; rather they are moving for summary judgment. As discussed below, on remand following <u>Brown I</u>, the district court denied some of the defendants' motions for summary judgment, which was affirmed in part by the Court of Appeals for the Eighth Circuit in <u>Brown v. Fortner</u>, 518 F.3d 552 (8th Cir. 2008) ("<u>Brown II</u>").

distance between his vehicle and the one in front of him; (5) the vehicle in front of him stopped abruptly causing him to brake as well; and (6) he followed all traffic laws during transport. (Cranford Decl. ¶¶ 9-12, ECF No. 52-2 at 2; see also Joyner Decl. ¶¶ 8, 10-11, ECF No. 52-3 (containing similar declarations)).  Taking the disputed facts in the light most favorable to Vinson, the court finds that Vinson has failed to demonstrate under the facts he alleges that Defendant Cranford's driving amounted to deliberate indifference to his safety.  Vinson's statements that Cranford was driving recklessly and speeding are conclusory and can be contrasted with the specific facts in Brown I & II and are insufficient to refute the defendants' evidence.  Cf. Brown II, 518 F.3d at 559 (observing that summary judgment was properly denied where the prisoner offered evidence that "Fortner was driving in excess of the speed limit, following too closely to the lead van, crossing over double-yellow lines, and passing non-convoy cars when the road markings clearly prohibited doing so" and that "the inmates riding in Fortner's van asked him to slow down, and Fortner ignored their requests"); Brown v. Morgan, 39 F.3d 1184 (8th Cir. 1994) (Table) (per curiam) (finding that the allegation that the officer transporting a prisoner in the rear of a patrol car refused to let him wear a seatbelt, drove at a high rate of speed in bad weather, refused to slow down despite the requests to do so, and taunted him for being scared under the circumstances was sufficient to state a claim of deliberate indifference); Walls v. Kaho, No. 5:06cv188-MTP, 2009 WL 901917, at *2 n.6 (S.D. Miss. Mar. 31, 2009) (noting that the "[t]ransportation of prisoners without seatbelts can constitute deliberate indifference where plaintiff can demonstrate 'a pattern of unconstitutional behavior,' such as a large number of prisoners suffering injuries during transport as a result of not wearing seatbelts") (citations omitted); Riddick v. Reiger, No. 2:03-cv-462-FtM-29SPC, 2006 WL 2644924, at *7 (M.D. Fla. Sept. 14, 2006) (finding no Eighth Amendment violation, in part, "based on the allegations of the Complaint it is clear that Plaintiff's injuries resulted from [the defendant's] actions

to prevent an accident [where] [the defendant] quickly applied the brakes to avoid hitting another car").

Moreover, numerous cases suggest that the failure to seatbelt prisoners alone does not rise to the level of a constitutional violation.  See, e.g., Dexter v. Ford Motor Co., 92 Fed. Appx. 637, 642 (10th Cir. 2004) ("We have identified no federal case holding that failure to seatbelt an inmate, standing alone, violates the Eighth Amendment."); Walls v. Kaho, No. 5:06cv188-MTP, 2009 WL 901917 (S.D. Miss. Mar. 31, 2009) (collecting cases and stating that "[m]any courts—including the Southern District of Mississippi—have held that there is no constitutional right of a prisoner to the use of a seatbelt while being transported, and that while failure to seatbelt a prisoner may give rise to a claim for negligence, it does not give rise to a cognizable constitutional claim").  Some courts have even reached this conclusion even when the failure to seatbelt the prisoners is combined with speeding or reckless driving.  See Young v. Michigan Dept. of Corrs., No. 04-10309, 2007 WL 2214520 (E.D. Mich. July 27, 2007) ("Refusing to seat belt a prisoner during transport and then exceeding the speed limit does not constitute an 'excessive risk to inmate health or safety.' ") (quoting Farmer, 511 U.S. at 837); Jones v. Collins, Civil No. 05-663-JPG, 2006 WL 1528882, at *2 (S.D. Ill. June 1, 2006) (stating that allegations of "reckless driving or the failure to fasten seatbelt, [] present, at best, claims of negligence, but a defendant can never be held liable under § 1983 for negligence").

Based on the foregoing, the court finds that Vinson has failed to present sufficient evidence from which a reasonable jury could conclude that there was a substantial risk of harm to Vinson and that the defendants knew of and disregarded the substantial risk harm.  Therefore, the defendants are entitled to summary judgment on this claim.

Moreover, even if Vinson's allegation could demonstrate that the individual defendants violated Vinson's constitutional rights, the individual defendants are still entitled to qualified immunity because the law was not clearly established at the time of the accident. To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 818, 821. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301-02 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and quotations omitted). "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." Vathekan v. Prince George's Cnty., 154 F.3d 173, 179 (4th Cir. 1998); see also Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose' ") (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)). It appears that at the time of the accident, there was no case law from either the United States Supreme Court, the Unites States Court of Appeals for the Fourth Circuit, or any court in South Carolina, either published or unpublished, establishing that the individual defendants'

actions would violate a constitutional right.  Moreover, even considering the cases from outside this circuit, the court observes that they do not appear to clearly establish that the defendants' conduct here would violate the Eighth Amendment and the court cannot say that the unconstitutionality of the individuals' conduct—if it could be considered to violate the Eighth Amendment—would have been evident to a reasonable officer.  Wilson v. Layne, 526 U.S. 603, 615 (1999) (holding that right can be deemed clearly established even if there is no prior decision addressing precise conduct at issue, so long as its unlawfulness would have been apparent to reasonable officer on basis of existing caselaw).

E.      **Vinson's Motions**

  1.      **Discovery Motions**

The court observes that Vinson has several motions to compel and a motion to stay pending before the court that allege either that he has not received items that were subpoenaed or that the defendants have not provided him everything he requested in discovery.  The crux of these motions appears to involve the video from the passenger van camera and obtaining copies of his medical records from the different jail or prison facilities where Vinson received care following the accident. With regard to the video, the defendants have repeatedly stated that a video does not exist.  With regard to the medical records, in light of the above discussions, the court finds that the medical records are not necessary to the resolution of the pending dispositive motion.  Moreover, it appears the defendants have since provided Vinson with these records.  (See ECF No. 111.)  Accordingly, if this recommendation is adopted, these motions should be terminated.  (ECF Nos. 69, 95, 100, & 101.)

### 2.    Mental and Physical Evaluation

Vinson has also filed a motion requesting a physical and mental evaluation of himself. (ECF No. 70.) Vinson does not state why he needs this evaluation; however, he presumably seeks an evaluation to prove his injuries from the incident at issue in this matter. Rule 35 of the Federal Rules of Civil Procedure does not appear to contemplate the plaintiff seeking an examination of himself. Further, Vinson cannot demonstrate good cause for the evaluation. See Fed. R. Civ. P. 35; Green v. Branson, 108 F.3d 1296, 1304 (10th Cir. 1997) (holding that a Rule 35 motion for a mental examination is not the proper vehicle to obtain medical care and raise claims of deliberate indifference to a plaintiff's medical needs).

Moreover, Vinson does not identify the source of any funds to pay for this evaluation. To the extent he requests that it be performed at public expense, such a request must be denied. See United States v. MacCollom, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress."); Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987) (upholding the district court's denial of a civil plaintiff's request for funds to pay an expert medical witness and observing that neither 28 U.S.C. § 1915 nor any other authority provides for such funding). For all of the foregoing reasons, this motion is denied. (ECF No. 70.)

### 3.    Hearing

Finally, Vinson has requested that the court hold a hearing in this matter. To the extent that he is requesting oral argument on the motions addressed in this Report and Recommendation, the court finds that oral argument would not aid the court in their disposition. Therefore, this motion is denied. (ECF No. 102.)

# RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion to dismiss, or in the alternative, for summary judgment (ECF No. 52) be granted.  In light of this recommendation, Vinson's motions involving discovery and to stay the case (ECF Nos. 69, 95, 100, & 101) should be terminated.  Vinson's motions for an evaluation and for a hearing (ECF Nos. 70 & 102) are denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 29, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).